Good morning, Your Honor. May it please the Court, my name is Larry Sackey and I'm appearing on behalf of the appellants in this matter. I think, Your Honor, for the purpose of this hearing, or at least a good starting point, would be for the Court to understand just what are the various aspects of a flexible premium variable-like policy. And I'll focus in on one aspect, which I think is really the important point here. The various costs and other expenses, these loads, these factors of expenses are set out separately in each policy. And in the case of a variable annuity, there are certain references to those within the prospectus that involves the security aspect of this product. That means that when a policyholder or his broker, in shopping this very competitive marketplace, to determine what are the fixed costs, what are the premium loads, what are the variable expenses, what are the certain income expenses, that they rely upon what is stated by the language of the policy. Here we have, I think, a very important admission by Pacific Life. In setting the 1.5 percent federal tax charge, as indicated within the opposition to the appellant's brief here, Pacific Life has admitted that it made a choice, that it was a pricing decision on this part, to charge 1.5 percent. They could have charged less. They could have charged more. But they didn't. And fitting it, blending it, and placing it within the policy in the same paragraph, implying that it is like a state tax charge, which is, in effect, a sales tax on premiums, which is fixed. In California, 2.35 percent. It's a pass-through. It implies to the policyholder, and the policyholders are misled to believe that this is some fixed charge that is directly related to their payment of premiums on a monthly basis. This is a to justify in this competitive marketplace to a reasonable policyholder that this is nothing more than like a sales tax. I was trying to think of an analogy. And the one that I could think of, and hopefully it does stand on its legs, is I believe that when I order a book through Barnes & Noble over the Internet, that there is no state sales tax. If I purchase that book over the Internet, and if Barnes & Noble said that there would be an additional state tax charge associated with that sale, it would be my understanding, as I think it would be most consumers' understanding, that that implies some kind of a sales tax charge. If Barnes & Noble came back, if they were sued in such a hypothetical case, and if they said, well, we do, it does have some relationship on our income tax, as a consumer, I would certainly like to know that. Let me ask you this, Mr. Osaki. Is there anything in the record which tells us, A, how Pacific Life calculated that there would be a 1.5 percent federal tax charge? B, whether that was accurate? And how can we tell? At this stage, because we're still at the pleading stage, the only thing that I could cite is the opposition brief of the appellees here. They cite, and it was also included in their opposition to, I'm sorry, it was in their motion to dismiss at the 12B6 stage. They come up with this rationale, and they say that because of the impact of DAC, the DAC legislation, Deferred Acquisition Costs, that in effect, because they had to capitalize and amortize the acquisition costs now over a 10-year period. It was more taxable income. No. Well, it could result in more taxable income, and that there is a ceiling on the amount of this expense deduction. Expense doesn't necessarily mean the bottom line of what the income tax they pay, of 7.7 percent. It's a very good question, Your Honor, because they chose to charge the policyholders 1.5 percent. But there's other companies that it is a charge which is because of DAC and its effect on their income taxes. Do they all, these others, do they refer to it as a DAC tax? It's all over the board. Some say it is a result of DAC. Some say nothing. Some say it's because of increased income tax liability. How do we know that other companies say that, and what's the relevance of it? Isn't this a motion to dismiss? It is a motion. Can't we just look at the face of the complaint? Absolutely. What does it matter what other companies say? I think it's important because in the motion to dismiss under 12b-6, the company, Pacific Life, appended 100 pages or so of insurance industry documents in which they asked the And in those documents, and I'm sorry I can't cite exactly where it was, but it was argued in the briefs here, they indicate that the 1.5 percent was, in effect, a discretionary pricing point that Pacific Life decided. They could have decided anything. And, in fact, there are other companies. It won't be argued, I don't believe, at this proceeding by Learned Counsel that there are in other variable life contracts all different kinds of charges relating to the imposition of tax legislation on income tax. Let me tell you what I understand to be their argument, and you tell me if I've got this right. I think what they're saying is that this is a matter of semantics. They called it a federal tax charge. What it really is is a cost that they're allowed to recover under federal tax law. Right. Maybe it's a misstatement. Maybe it's not. But it's not material. It's word games we're playing. Well, my response to that, Your Honor, and I did put it in the reply, is it may be a matter of semantics to Pacific Life, but that's not the issue here. The issue here is whether or not it is a material matter upon which reasonable policyholders, based on this language, which is ambiguous, is material in their decision to purchase or not to purchase. Or to negotiate. Or to negotiate, or to go to another company, or while they have a policy to maybe make another investment. They are told, if it's ambiguous, that there is a 1.5 percent federal tax charge. They are not told that it involves Pacific Life's potential income tax liability for any year. Does this provision, am I recalling this correctly, that the provision involved also has a proviso that says something like, we reserve the right to change these figures, the 2 point something sales, state tax, and the 1.5 federal tax, if the law changes? Yes. And I think that's more misleading. Because the exact language is, we reserve the right to change the rate. Rate applies to reimbursement, to respond to changes within the law. Now that, why would any policyholder, without being told that they're subsidizing the profitability of an insurance company in terms of whether they pay or don't pay income tax for any given year, agree to do so, unless he was told? Clearly in the policy, in the prospectus, Pacific Life can cite to nothing to indicate that that 1.5 percent is used to defray their potential income tax liability, and it may have some tangential relationship to the payment of premiums, but income tax also involves other expenses, other deductions, other income, other write-offs, one-time charges. Now if a policyholder is told of that, then we wouldn't be here. But in the language that we have here, and everything in the policy, as well as in the prospectus, including, Your the rate to respond to changes in the law, that implies something akin to a pass-through tax, such as a premium tax, which is, in fact, what each state of the union charges for policyholders who are residents of that state. May I ask you this? This is a case, as Silberman pointed out, arises on dismissal of a complaint, 12b-6, but it also is of a statute, SLUSA or SLUSA, whatever, however you talk about it, which has very precise requirements as to pleading. Would you be so good as to indicate for me each one of the elements of SLUSA, which is required, and where in your complaint you state those facts that they should be stated? Your Honor, I think the pleading requirements are under PSLRA, the Private Litigation Securities Act. And I would – we did cite in our opening brief with particularity why we claim that this complaint clearly passes muster. And I think it's in the opening brief where I may find that. Your Honor, it would – may I apologize for that? Somewhere in there. It is in there. I will make that representation. All right. I'll find it. I'm very sorry. I think it's at page 37. At least there's something along those lines at page 37. There were bullet points, Your Honor, and we cited the facts which we believe pass muster. And then you have the pleading requirements under the private securities act legislation. In fairness to you, I think the district judge, she didn't find you didn't plead it properly. No. She found that it wasn't material, wasn't false, or whatever she found. That is correct. Nor have I heard anything from Pacific Light to indicate that they didn't understand that the pleadings were filed with specificity and particularity. The district court really didn't give us much of an analysis of the requirements of Silicon Graphics, I don't think. I don't believe so. I'm not sure whether you meet those requirements or not, but I didn't see much in what the district court said to indicate that the court had really grappled with that. I don't believe the court grappled with that. I think what the court decision turned upon was her own, and I'll explain it as an objective view, that the terms of the policy were unambiguous. The court did not take into consideration what we believe to be the substantive law that is to be applied in terms of determining interpretation of insurance contract language, what is the reasonable interpretation of the reasonable policy holder. It didn't touch that at all. And the court said in any event, it was immaterial. But you don't have to get to that step about the reasonable expectation of the policy holder if the text is plain English and can be determined on 1644 of the Silicon Graphics. I would agree. But in this case, I think there are some admissions that were made by defense counsel in the transcript of the argument. Defense counsel in that case used all different ways to try and somehow fix the language of federal premium tax. Your complaint is very clear. You say it's a two point three five excise tax by the state of California and on the same line and using the same language. Things charges is a one point five federal tax charge, which is a bogus term because there isn't a federal tax charge on this transaction. That is precisely our argument. And and if that is to be declared as immaterial based on the language as we flooded in the complaint, then I would have to differ because I believe that consumers and especially people who invest in people who buy these kind of policies should be told in plain English. Did the district court say that one point five was de minimis? No, no, I thought it wasn't material. No, I believe what the district court did was they bought Pacific Life's argument of a so what? So they paid for this policy and they paid the one point five percent. It has some relationship to their payment of federal income taxes, even though they don't disclose it to the policyholders. I don't know if this is fair to the district court, but I kind of read the summary order to suggest that the district court kind of accepted that this charge could have been made with a different name and maybe it was just miss mislabeled. Yes. Miss named. So either in the industry jargon, this was called the tax a lot. And so there was no misrepresentation or if there was, it was immaterial. Not in the sense that one point five percent of a premium is immaterial legally, but in the sense that it could have been charged if they had described it more precisely. I would agree that was the characterization that I believe the district court made on that. And I would argue that that is incorrect because the wrong standard was used. It may be immaterial to Pacific Life, but the court didn't touch on what we believe the mislead, a purchaser or a policyholder of this particular product. And I don't believe at that stage it clearly there is ambiguity within the prospectus as well as within the policy itself that a district court without reference to other sources to which we objected to at this stage can possibly make that determination. It is a question of fact for a trier effect at some stage in this proceeding, whether it be at a motion for summary judgment or whether it be a trial. And we should have the opportunity to bring in our sources, our industry sources as well, to show that what is being asked for by this judge and looking at these extraneous materials is that, in fact, there is a material dispute relating to that. Well, let's go back to the statute for a minute in Silicon Graphics because we can affirm on any ground supported in the record. So if we thought the district court screwed up, but that the complaint still didn't meet the requirements of Silicon Graphics, I suppose we could affirm the dismissal. The complaint has to, quote, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind. That's the statutory language. And I think Silicon Graphics says, I should have it memorized, but you know, something like you've got to show a particular fact showing a strong inference of conscious or So if they just mislabeled something that they could have charged, how does that meet the Silicon Graphics standard? Well, we don't believe that this is just a mislabeling. Insurance companies, especially large insurance companies like Pacific Life, go through an excruciating process, committees, memos, decisions as to every piece of language that goes into a policy. They know, and there's no hiding it because we got that admission from their general counsel, that this was not related to a direct income tax, but rather, I'm sorry, a DAC legislation on their potential income tax liability. All they had to do was say it. Now, that's been pled in our complaint. There's no confusion by Pacific Life, nor have they ever brought it up, as far as I can recall, that they don't understand that that's our claim. The placement of the language that was blended within the language involving the state premium tax. Look, under Silicon Graphics, as I'm understanding this, I just found the language from that case. In terms of this required state of mind, Silicon Graphics says the plaintiffs have to plead at a minimum, quote, particular facts giving rise to a strong inference of deliberate or conscious recklessness. So how does this pleading, how does this assertion of a federal tax charge meet that standard? How does your complaint meet the standard by complaining about that? We believe that in our complaint, because of the language in the policy, consonant with the language in the prospectus, its placement and the fact that it is not a federal tax charge, it is a discretionary charge relating to their potential payment of income taxes. And because of the competitive nature, which is not admittedly in our complaint, but one in which I also ask that we'd be allowed leave to amend. And I believe that if we are allowed leave to amend, we would include additional claims relating to the industry in general. The knowledge of Pacific Life is one of the leading players in this field. And the fact that they knew, and certainly if they, or they recklessly disregarded, and in fact, they deliberately included that language in the policy for the purpose of misleading its policyholders, who reasonably would have believed, based upon that implication, that they were paying some kind of a premium tax. It's not. It's that simple. Thank you very much, Mr. Sack. Thank you. Good morning, Your Honor. I'm David Bacon, a field-reading priest. May it please the Court. Let me start by saying, and I apologize, my throat's a little bit hoarse. And if you have trouble hearing me, if I sound like a frog at a moment in time, I may want to grab a sip of water, if that's permissible.  I appreciate that. Thank you. I can hear you pretty well. I don't know about the other judges. Mr. Sack, you can have some water, too, if you'd like. Got to be even-handed here. The first few words are easier for me than what may follow. Let me talk about the language and the prospectus and the policy which the Court has been discussing. So if you will, I'm going to try to weave into the discussion that has been going on. The charge or load against premiums that is taken is occasioned by the amortization consequences of the 1990 Internal Revenue and Code Amendment. Section 848 was enacted in 1990. That has the effect of requiring carriers to we're talking right now simply about variable annuity policies. That section has the effect of requiring those carriers to accelerate the payment of income tax on their income because they're required to amortize. It's essentially 7.7 percent of premiums over a period of 10 years. Let me give you two examples. Counsel, doesn't that depend on the other income and the other deductions and losses that the company receives? It isn't mathematical that on the income on the premiums received from Mr. Sager, this company will pay 1.5 percent of those premiums to the federal fisc. In this case, it may well have a series of deductions or other losses, which in the taxable year mean it pays no percentage of what Mr. Sager paid as a premium. Isn't that correct? Yes and no. There's always an outside possibility that a particular company might have an unusual tax year. On the balance, the information we've provided by way of law review sites, sites from journals of the American Association of Actuaries, it's very clear that the average charge being made by the carriers on variable products is between 1.25 and 1.75 percent. That's supposing they make money in the taxable year. Pardon, my apologies. That's supposing that they make money in the taxable year so that there is tax on their income. But if they have accumulated losses or other deductions which are allowed to reduce the taxable income, the incidence of taxation because of the payments that Mr. Sager made will be zero. The 7.7 percent applies against premiums. The two parts of the taxes, the deduction. Correct. You don't get a deduction if you don't have any net income. You lose the deduction or you carry it forward to the next year. But what I'm saying is that there is no actual incidence of 1.5 percent of Sager's premium being sent to the IRS ineluctably. It depends on the results of the year's operations. Is that correct? Yes. But the industry is as large as a carrier. Statistics are very well kept and the average, which I don't think we can tell Mr. Mr. Sager, there is an average charge of 1.5 percent in the industry, which we're applying to you in order to shift a cost to the company, to you as a buyer. Don't say that. You don't state what basis there is for coming to the language. 1.5 percent federal tax charge. Right. I'm a little lost. Are you suggesting there is no federal tax charge at all? No. I said yes. I'm suggesting there's no federal tax charge on Mr. Sager's premium that goes to the federal government directly. There is the potential of there being a loss of a deduction or less of a deduction, which will eventuate in a 1.5 percent higher effective tax paid. But that's not a tax on Mr. Sager's premium, is it? Well, it's not. We don't refer to it as a tax on Mr. Sager's premium. Well, you do in a way because it's a 2.35 state tax charge, which is a tax on Mr. Sager's premium, comma, and federal tax charge 1.5 percent. It would be a different case, Your Honor, if we if the language, the prospectus, the language of the policy, which the law requires us to look at, say that there's a 1.5 percent federal premium tax being imposed on the premiums you pay. That's the policy. No, you didn't say that, but you didn't say premium tax as to the 2.35 percent, did you? We don't call it. My point, putting aside numbers, is we don't call it a premium tax at all. We call it a federal tax charge. What I'm saying is you use the same language with respect of the state 2.35 percent as you do with the 1.5 federal charge. Correct. It's on the same page in the same paragraph. It's saying it's on the same sentence in the prospectus. Right. I don't recall that it's the same sentence, the same paragraph. It's within the same 50 words, if you will. But one is an actual excise tax. It's a premium tax. That's a 2.35 percent. Yes. And the other is not. The other may be 1.5 percent and may not be, depending on operating results of the year. Correct. Yes. But the premium tax isn't paid by the purchaser. It's paid by the insurance company, just much like a sales tax isn't paid by the purchaser. It's paid by the vendor. No, it's collected by the seller, but it's charged to the buyer. That was the last time I bought something at Walgreens. They charged me a tax. They collected it from me, but they forwarded it to the Franchise Tax Board. Well, I believe there's an obligation on the vendor to collect and pay the tax. See, in the language I'm looking at, it says there are a few provisions. One of them says for each premium paid, there's a premium load that consists of a sales load of 2.5 percent. I guess that's like a sales charge, plus the charge of 2.35 percent for certain state and local premium taxes, plus a charge of 1.5 percent for certain federal taxes. So it's in that same sentence together. It sounds like the certain federal taxes are sort of like the certain state and local premium taxes. But as I understand it, the state and local premium taxes are a legal obligation to pay a percentage of the premium in state tax. Whereas the federal tax charge is really an estimated expense to the insurance company based on an experiential and actuarial base, you know, that permits an average calculation. Do I have that accurately? Well, I'd say a little bit differently. The federal tax charge that's being assessed is a consequence of the 10-year amortization rule. And for the industry as a whole, I think there are very few exceptions with respect to individual carriers if they're solvent and still operating over a period of time. If they make money on average, it's going to cost them 1.5 percent of the premium. Is that the idea? A little bit different. Between 1.25 and 1.75, the Pacific Life chose a mid-range of those figures. Yes, and that tax consequence is not a mere contingency. It is something that impacts industry and impacts Pacific Life. I understand. It's probably about as certain as night follows day if the company makes money. But still, is there a fact issue about how that language would be understood by a reasonable investor? Well, if I were reading that, I guess I don't want to put myself into it. A reasonable investor reads it and they read that language I just said, and then they read another provision that says. We deduct 1.5 percent from each premium payment to pay federal taxes. We reserve the right to change this rate to respond to changes in the law. It sounds sort of like a pass-through tax, but that isn't what it is. Well, the changes in federal law could be the industry. Love to see Section 848 repealed. And if it is, then there would be a change in the tax law. And this would, over a period of time, this this charge would go away. I understand the federal law could change and it would change the experience with regard to that. Well, it would eliminate the basis for having to make a charge at all over a period of time. What bothers me, I just I think I'll put my finger on it and then I'll shut up and let you make your argument. Is what bothers me is that a lot of this depends on seems to me on what a reasonable investor would think reading it. Perhaps unless 1.5 percent is just immaterial. And some of it depends on what the industry context is. And you may be right that in the industry context, it's appropriate to call it a federal tax charge. But I'm just wondering if that doesn't require factual development and discovery and then a summary judgment motion. Well, we have. HRSA is designed in part to try to avoid putting targeted class action defendants through that sort of a burden. If I could just make a short argument. Well, I'm not departing from your point. I'm just trying to give address it from us, from my perspective, you know, what's on my mind. I don't want to deflect your argument from what you intended. Well, we're thinking about the same thing, the reasonable policy holder. I'm I'm going to look at it in context of personal and in the context of the charges and your federal securities law being made. Namely under Section 10b of the Exchange Act, the SEC's Rule 10b-5. The courts have addressed issues similar to this before where they may have felt the language is not the language that Benjamin Cardozo might have come up with in his finest hour. And they realize the corporate counsel aren't Benjamin Cardozo as always. In fact, there's a third circuit decision that's listed in the appendix that we cite, which makes precisely that point. Other courts have said that in exercising their authority to enforce Section 10b of the Exchange Act and SEC's Rule 10b-5, they're not to act, the courts, the judges are not to act as copy editors. They're supposed to realize that there may be an infinite way, infinite number of ways to arrange facts and statements. And a certain level of tolerance has to be given. Let me just explain that a more comprehensive explanation of the federal tax charge could be given through the following language. And it's more than two or three words. That would be, we will make a premium charge based on federal tax consequences arising from amortization requirements in the Internal Revenue Code for certain percentages of premiums we collect. That would be a reasonably accurate, but difficult to follow for the average reasonable investor description. The reasonable investor's eyes, I think, would glaze over much as I believe I saw at least three pairs of eyes glaze over when I finished my description. I mean, yes, it is possible to give a more detailed description, but sometimes less is more and sometimes more is too much. And that's part of the problem here in trying to come up with a perfect description for that goes like this. We'll charge you the two point three five percent that we have to as a excise and we'll pass on to the state of California. And we also charge you one point five percent to put in our pocket so that we can pay our taxes if we have any. But that's not your concern. I think that's a very clear statement. Well, I think that's a little bit loaded because it doesn't say if you were trying to make it that way. I understand you're trying to be provocative and that's fine. That goes with the with the territory. The problem is it simply doesn't account for the fact that Section 848 of the Internal Revenue Code imposes the 10 year amortization requirement. And that has a very, very significant impact to your business, a billion dollar a year impact on the insurance industry. And the materials we've provided indicate that a number of senators have been very concerned that that impact hits on. Products designed so that people buy for retirement, you know, to help make the retirement package. They're concerned that the federal government is putting a tax on that type of a product. I think that what the counsel, Mr. Seager, really wants you to do in a nutshell is do exactly what the other federal courts have said shouldn't be done. That would be put on your copy editor hats and say, oh, no, this could have been written differently. We don't like the way it's written, and therefore we think that there may be a violation of Section 10b, the Exchange Act or Rule 10b-5. I don't think that's supposed to be done. Did I characterize your your position on the motion to dismiss when I was talking to Mr. Seneke? Did I characterize it correctly? This is basically, in your view, a semantical quibble. Yes. Yes. And that it's either not false at all or it's it's not material. Exactly. We don't think I just want to make sure I'm clear and answer to Judge Gould's question a moment ago. You're not claiming they didn't plead this with specificity. You're saying it's not false. It's not it's not material. Exactly. We're saying it wouldn't make a dime's bit of difference to the average reasonable investor, because if you put before the average reasonable investor, the full-blown, accurate paraphrase of the amortization consequences of Section 848 of the Internal Revenue Code, the average reasonable investor would make the same decision as if it had been presented as we're making a 1.5 percent premium load for a federal tax charge. Suppose your landlord were to give you a notification, I take it you rent your office, notification where to sit, where to say not your rent's going up because depreciation schedules have changed, but your rent's going up because of the federal tax charge. Would that be a clear and straightforward explanation of the fact? Unfortunately, part of my head cold is on top of having trouble talking. I didn't hear exactly what you said. If you would repeat it, the federal government on landlords office space were to change and they said instead of taking it for 10 years, now you've got to stretch it out to 20 years. So therefore, there'll be more tax on your net income. Right. Because the depreciation schedule has been lengthened and the landlord would say this is going to affect a hundred dollar difference in your rent. Would he be justified in saying to you, there's a federal tax charge of one hundred dollars you're going to have to pay from now on? That's not what I think that analogy isn't even really in the same county as what we're doing here. There is Section 848 does require a 10 year amortization of a very significant shock of premiums. It used to be directly deductible in the year in which it was paid. Right. And they said, no, you can't do that. Any more, you're going to amortize it over a period of years. Originally, you could amortize it immediately. We're talking about a year of sale charges. You can amortize right away. You're now required to amortize 7.7 percent for this product over a period of 10 years. The law is still on the books. That has very profound consequence. Let me give you a quick example. We're 14 years into the statute. We have now the industry has been able to catch up, if you will, by way of amortization on the policy sold in the year 1990. But going back 10 years from now to 2004, going back to 1994, they still they're still behind. And each year they're selling policies which have the same very disadvantageous tax consequences for them. They will remain perpetually behind. You will never catch up. It's a disappearing horizon for a policy sold this year. In the first year, you essentially amortize 10 percent, meaning you lose a large tax deduction, meaning you pay more taxes. If I've not answered your question, I'll try again. I was trying to respond to it by saying, yes, there's a real tax consequence here. Taxes have gone up because you can't simultaneously and in the year of incidence deduct the expenses. You're required to amortize them over a period of time, reducing your deductions and causing you to have more taxable income. That is something which happens to landlords all the time and people who own machinery and make pipe and things like that. But it's it's directly the difference, Your Honor, is this. Amortization consequence on this tax charge being made by the industry is directly related to premium income. The lost. Amortization is or the required amortization is seven point seven percent of premiums for this product. The premiums serve as a direct yardstick for the amount that is lost. The other income of a company, which is a point I think you're trying to make, such as investment income or other related income, would only come in to figure out what for that for that company for that particular year would be the actual dollar result in terms of the additional income tax paid. We're arguing that that averages out to one point two five to one point seven five percent. We're mid range. Our point is that's a level playing field for the reason average reasonable investor. He or she will look at this figure, look at our description and be very similar to what other carriers are saying. And if the other another carrier were to give very elaborate reference to Section 848 Internal Revenue Code amortization requirements, I recited a few minutes ago and everyone's eyes glazed over. I think the the investor would have the same feeling that, you know, this. Why are you giving me all this detail? We're out of time. I think George Gould had one last thing. I have a question for clarification and I'll ask Mr. Sackey the same question if he wants to express a different view. But looking at the policy language where it says we deduct a premium load from each premium, it's got that word load. And then it says the premium load is made up of a sales load. So my question is, is it clear what the word load means in the industry context? I think the load just mean expense or does it mean something different? I just want to know if there's an industry meaning of the word load. Yes. In the industry, there are two words that are synonymous. They would be load and charge. Sometimes sometimes someone will say we're making a premium load. That means we're making a charge against premiums. Sometimes they'll say they're making a premium charge. That means they're making a premium charge. It's a deduction against premiums. The load and charge mean exactly the same thing. They're used interchangeably. I think they're used interchangeably in this policy, too. That answers my question. OK. Thank you very much. Mr. Sackey, you get the last word. Mr. Sackey, do you disagree with your colleague's explanation of the term load? I do not. I do not. I agree that two fine lawyers agree on one thing in this difficult case. Thank you. And I just have a very, very short comment. And I think that the fact that in the appellee's opposition brief here, that they are not able to point to anything, anywhere, that in any kind of an industry publication, that the federal premium, federal tax charge is directly related to income taxes. And, in fact, at the argument, at the motion to dismiss, at page 10, Mr. Bacon said, the common term for this charge would be a federal tax charge, comma, DAC tax, or perhaps a consequence of amortization requirements with Section 848 of the Internal Revenue Code. That, in and of itself, I think, illustrates the ambiguity. Inasmuch as the district court did not use the proper standard for interpreting insurance contract language, didn't even touch on it, we believe that we have adequately pled in our first amended complaint a cause of action. Thank you, Mr. Sackey, Mr. Bacon. Thank you. The matter does argue to submit. It will stand in recess for the day. All rise. This court for this session is adjourned.
judges: Silverman, Gould, Bea